IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA L. OTEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 13-CV-736 –SMY-PMF |
| | ) |
| CITY OF FAIRVIEW HEIGHTS, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Joshua L. Otey brings this action against Defendant City of Fairview Heights for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e *et seq*. Plaintiff is a former patrolman for the Fairview Heights Police Department. He alleges that his supervisor, Michael Houget, made sexually derogatory comments to him and that he was subjected to adverse employment actions after filing a complaint against Houget.

On January 16, 2015, Defendant moved for summary judgment (Doc. 33). On February 14, 2015, Plaintiff filed a Response to Defendant's Motion for Summary Judgment (Doc. 35) and also moved to voluntarily dismiss his sexual harassment claim (Doc. 34). Defendant filed a response in opposition on February 18, 2015 (Doc. 36). The Court has carefully considered the briefs and evidence submitted by the parties and, for the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Further, Plaintiff's Motion to Dismiss is **DENIED**.

## FACTUAL BACKGROUND

Plaintiff Joshua L. Otey began working as a patrolman for the Fairview Heights Police Department ("FHPD") on November 5, 2008 (Doc. 26, ¶¶ 8-9). Upon completing his field training, Plaintiff was assigned to Sergeant Michael Hoguet's squad (Doc. 35-2). The chain of command at FHPD during the relevant time period was as follows: Hoguet was Plaintiff's direct supervisor from January 2009 until December 3, 2009; Hoguet reported to Lt. John Proffitt; Proffitt reported to Nicholas Galius, Assistant Chief of Police; and Galius reported to Edward Delmore, Chief of Police (s*ee* Docs. 33-2, 33-3, 33-4, 33-5).

In April 2009, Hoguet assigned Plaintiff as one of the points of contact between the FHPD and the residents of Wildhorse Creek (Doc. 35-14; Doc. 35-5, pp. 103-104). On November 6, 2009, Plaintiff and fellow patrolman Carleton Rivers received an email at work from Fairview Heights resident "Julie" regarding incidents involving "Lisa" and Lisa's boyfriend, "Doug" at Lisa's residence on Wildhorse Creek Drive (Doc. 35-15; Doc. 35-17, p. 1). Julie's email included the comment: "Doug seems to think that Lisa is seeing Officer Otey on the side because of the few recent tickets he has written lately to Doug!" (Doc. 35-15). After reading Julie's email, Plaintiff decided to prepare a memorandum to Hoguet informing him about the email, explaining that Plaintiff had no romantic relationship with Lisa, and requesting a meeting with Hoguet to discuss whether he should continue to be the liaison for that neighborhood in light of the allegation (*See* Doc. 35-1, pp. 134-137; Doc. 35-17, p. 1; Doc. 35-13, pp. 2-3).

On the morning of November 7, 2009, the FHPD received a call from dispatch regarding a domestic disturbance on Wildhorse Creek Drive involving Lisa and Doug (Docs. 35-16; 35-17, 35-23). Plaintiff, Hoguet, and patrolman Kenneth Coates reported to the scene. At that point,

Hoguet was informed about the email (*Id.*).  Hoguet called Plaintiff into his office and requested a copy of the email and a memorandum (Doc. 35-24).  Hoguet informed Plaintiff that the allegation of a sexual relationship between Plaintiff and Lisa was serious, that Plaintiff would be investigated and that he might have to take a polygraph test (Docs. 35-24, 35-13, p. 3). Plaintiff denied any relationship with Lisa (Doc. 35-24).

Later that shift, Plaintiff handed Hoguet the requested memorandum in the FHPD report-writing room (Doc. 35-1, p. 31).  Patrolmen Coates, Jeff Hinson, and Nate Harris were also present (Docs. 35-13, pp. 2-3, 35-24, p. 2).  Hoguet asked Plaintiff, in the presence of the other patrolmen, "So, you have any other women on the hook I need to be aware of?" and laughed (Doc. 33-1, pp. 154-55; Doc. 33-23).  Plaintiff responded, "No, and I take this incident seriously as it is a personal and professional attack on me and not a joking matter" (Doc. 33-1, pp. 156-161; Doc. 33-23).  Hoguet laughed and asked Plaintiff where he got his condoms from and made a remark about the small size of the condoms Plaintiff used on Lisa (Doc. 35-24).  Hoguet told Harris to get the "Otey-sized" condom from the FHPD medicine cabinet (Doc. 35-13, Doc. 35-24).  Harris returned from the medicine cabinet and put a small latex cover on the end of his finger (*Id.*).  Hoguet and Harris laughed (*Id.*).  Plaintiff stated it was not funny (*Id*).  Plaintiff was red-faced, visibly upset, and nearly in tears (Doc. 35-13).

Two days later, on November 9, 2009, Hoguet sent two memoranda to Proffitt which were critical of Plaintiff (Docs. 35-18, 35-21).  Proffitt testified that he reviewed monthly reports of probationary employees such as Plaintiff (Doc. 33-4, pp. 26-27).  On December 1, 2009, Proffitt gave Plaintiff two Letters of Reprimand.  The first letter, dated November 16, 2009, was regarding a suspicious activity call that had occurred on November 3, 2009 (Doc. 33-1, pp. 143-148; Doc. 33-18).  The second letter, dated November 30, 2009, was regarding an incident with a

3

stolen vehicle that had occurred on November 6, 2009 (Doc. 33-1, pp. 148-153; Doc. 33-21; Doc. 35-5, pp. 131-145). Both incidents were reported to Proffitt by Hoguet in the two memoranda (Doc. 35-5, pp. 131-32).

Also on December 1, 2009, Hoguet gave Plaintiff a written reprimand disciplining Plaintiff for three separate incidents: one from October 6, 2009, regarding a pedestrian check; one from October 11, 2009, regarding another pedestrian check; and one from November 7, 2009, regarding the email (Doc. 35-23; Doc. 35-5, p. 139). In addition, Hoguet inquired about a citizen complaint from "Sam" regarding a missing slice of cheesecake (Doc. 35-30). Sam had accused Plaintiff of stealing the cheesecake (*Id.*). Plaintiff denied any wrongdoing (Doc. 35-30).

On December 2, 2009, Hoguet called the shift in for a meeting about a year-end party (Doc. 33-1, pp. 46-48). Plaintiff, Coates, Hinson and patrolman Jeff Stratman were present (*Id.*). Hoguet stated that wives or girlfriends were welcome to attend, but not to bring both (*Id.*). Hoguet laughed, looked at Plaintiff and told him not to bring Lisa (Doc. 33-5, p. 148; Doc. 35-13; Doc. 35-24). Plaintiff told Hoguet he did not think it was funny (Doc. 35-13).

On December 3, 2009, Plaintiff met with Proffitt and made a complaint of sexual harassment against Hoguet (Doc. 35-24; Doc. 35-25). Upon receipt of Plaintiff's complaint, Plaintiff was reassigned to Sgt. C.J. Beyersdorfer's squad, moved from the night shift to the day shift and switched from residential to business patrol duty (Doc. 35-40; Doc. 35-4; Doc. 35-33).

Gailius conducted the investigation of Plaintiff's sexual harassment complaint (Doc. 35-6, pp. 10-11; Doc. 35-34). When Gailius interviewed Plaintiff, he videotaped the interview, had another officer present as a witness, and took notes (Doc. 35-6, pp. 74-79; Doc. 35-34, pp. 3-4). Gailius also interviewed Hoguet, Beyersdorfer, and Rivers, but did not videotape those interviews and had no witnesses present (Doc. 35-6, pp. 85, 88-89; Doc. 35-34, pp. 4-5).

4

Although Plaintiff reported that Coates and Harris were present for both incidents and that Harris had actually participated in the November 7, 2009, incident, Gailius did not interview either of them (Doc. 35-34, pp.1-3; Doc. 35-6, pp. 89-90; Doc. 35-25).

After Plaintiff submitted his complaint of sexual harassment to Proffitt, Hoguet told Coates that he was going to get rid of Plaintiff (Doc. 35-13). On December 15, 2009, Plaintiff was issued a written warning regarding his sick leave usage from Proffitt (Doc. 35-28). The warning about sick leave usage was noted on Plaintiff's year-end performance evaluation (Doc. 35-4, pp. 104-05; Doc. 35-41; Doc. 35-29). Proffitt had not previously issued this type of warning to any other patrolman (Doc. 35-4, p. 105). However, Proffitt subsequently issued a similar memo to Officer Ben Hester (Doc. 33-71).

On December 22, 2009, Delmore notified Plaintiff his sexual harassment complaint was unsubstantiated (Doc. 35-26). On January 14, 2009, Delmore issued a memorandum to Plaintiff indicating that the formal investigation of the citizen's complaint regarding the cheesecake resulted in a finding of "Not Sustained" (Doc. 35-48; Doc. 35-49; Doc. 35-4, p. 126). That same day, Proffitt sent a Memorandum to Delmore, recommending that Plaintiff's secondary employment be denied (Doc. 35-28). The reasons given for the denial of secondary employment was Plaintiff's low productivity. However both Proffitt and Gailius testified that Plaintiff's productivity for July through October 2009 was on a par with that of Coates and Rivers; further, Plaintiff was on vacation for two weeks in November 2009 (Doc. 35-4, pp. 107-109; Doc. 35-6, pp. 116-117). Plaintiff had performed secondary employment during 2009 before he made his sexual harassment complaint (Doc. 35-11). Officers Edgar Ellis and Hester were also denied requests for secondary employment (Doc. 33-71).

On January 20, 2010, Plaintiff was given his performance appraisal for the year ending December 31, 2009, and received an overall rating of "Unsatisfactory" (Doc. 35-27). Although Beyersdorfer contributed some information, Hoguet completed the entire evaluation and made the decision regarding Plaintiff's ratings (Doc. 35-27; Doc. 35-5, pp. 160-161). Delmore informed Plaintiff that he was going to recommend his termination to the Board of Police and Fire Commissioners, but in lieu of that, would accept Plaintiff's resignation (Doc. 35-7, pp.82-85; Doc. 35-4, pp. 97-102; Doc. 35-27). Delmore also told Plaintiff that he did not feel Plaintiff was up to the level of an acceptable officer for the FHPD (Doc. 35-2, pp. 82-83). Plaintiff responded that he could not resign because he still owed the FHPD money under his contract (Doc. 35-7, pp. 83-84). Delmore advised Plaintiff that if he resigned, he would not have to pay anything back to the City (*Id.*). Plaintiff submitted a resignation letter on January 21, 2010 (Doc. 35-36).

On August 17, 2010, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliation (Doc. 35-12). On April 22, 2011, while the charge was pending, Plaintiff received a conditional job offer from the Federal Bureau of Investigation ("FBI") (Doc. 35-31). The offer was subsequently rescinded based on Plaintiff's background investigation (*Id.*). A Freedom of Information Act ("FOIA") request to the FBI revealed that Proffitt told the FBI that he "did not feel [Plaintiff] had leadership potential" and that Plaintiff "is not eligible for rehire" (Doc. 35-31; Doc. 35-4, pp. 133-134). Proffitt testified that he knew Plaintiff's EEOC charge was pending at the time (Doc. 35-4, pp. 134-135). The FHPD provided the FBI with Plaintiff's unsatisfactory December 2009 performance evaluation, but not his satisfactory June evaluation (Id. at pp. 127-129). The FBI also interviewed Hoguet who reported that Plaintiff had "filed an EEOC

complaint against him for workplace harassment which is still pending" (Doc. 35-31; Doc. 35-5, pp. 197-99; Doc. 35-1, pp. 19-21). Proffitt also spoke with the New Athens Police Chief regarding the cheesecake incident and informed him that there was no truth to the rumors regarding Plaintiff (Doc. 33-4, pp. 132-133).

On June 20, 2012, the EEOC determined there was reasonable cause to believe that the FHPD retaliated against Plaintiff for engaging in protected activity (Doc. 35-12). Plaintiff filed the instant action on July 23, 2013 (Doc. 1).

## ANALYSIS

Plaintiff asserts that he was sexually harassed and retaliated against while employed by the FHPD. Fairview Heights argues that it is entitled to summary judgment on Plaintiff's sexual harassment claim because Plaintiff cannot establish that the alleged harassing statements were severe, pervasive or based on his gender. Fairview Heights further contends that summary judgment is warranted on Plaintiff's retaliation claim because it did not take any adverse action against Plaintiff and the alleged retaliatory acts would have occurred even if Plaintiff had not engaged in protected activity.

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.* 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha*

*County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to a judgment as a matter of law where the nonmovant "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

## Sexual Harassment

In Count I of the First Amended Complaint, Plaintiff asserts a claim for sexual harassment. After Defendant's Motion for Summary Judgment was filed, Plaintiff moved to voluntarily dismiss his sexual harassment claim without prejudice (Doc. 34). Plaintiff has provided no reason why his motion should be granted.

Pursuant to Rule 41(a)(1) of the *Federal Rules of Civil Procedure*, a plaintiff cannot voluntarily dismiss an action without a court order once the opposing party serves either an Answer or a Motion for Summary Judgment, unless all parties who have appeared stipulate to the dismissal. Fed.R.Civ.P. 41(a)(1); *see also Berthold Types Ltd. V. Adobe Systems Inc.*, 242 F.3d 772, 777 (7th Cir. 2001). "Rule 41(a)(2) requires the plaintiff to persuade the district court and to establish that voluntary dismissal without prejudice is warranted." *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177-78 (7th Cir. 1994). "It is an abuse of the court's discretion to grant a motion for voluntary dismissal where the defendant would suffer 'plain legal prejudice.'" *Hruby v. Hodge*, 2013 WL 6697812 at *1 (S.D. Ill. Dec. 19, 2013, citations omitted). Relevant factors

in determining whether a dismissal without prejudice is warranted may include: "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact a motion for summary judgment has been filed by the defendant." *Gurnett v. AO Smith Corp.*, 2014 WL 1320670, at *1 (S.D. Ill. Apr. 2, 2014) (citing *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969)).

Here, Defendant opposes Plaintiff's motion for voluntary dismissal on the basis that a significant amount of time and effort has been expended defending Plaintiff's sexual harassment claim. Moreover, Defendant contends that it allotted a number of pages arguing for summary judgment on Plaintiff's sexual harassment claim – pages that could have been utilized to more fully develop its legal and factual arguments regarding Plaintiff's retaliation claim. The Court finds that these factors weigh heavily in favor of denying Plaintiff's motion for dismissal without prejudice.

It is clear that Plaintiff has abandoned his sexual harassment claim. Indeed, in response to Defendant's Motion for Summary Judgment, Plaintiff failed to address the sexual harassment claim. When a party fails to address an argument in his summary judgment response, it is deemed a waiver. *See Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 876 (7th Cir.2008); *Palmer v. Marion County*, 327 F.3d 588, 597-599 (7th Cir.2003); *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 810 (7th Cir.2001); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir.1999). Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Count I of Plaintiff's First Amended Complaint alleging sexual harassment and denies Plaintiff's Voluntary Motion to Dismiss Count I of his First Amended Complaint.

**Retaliation**

In Count II of the First Amended Complaint, Plaintiff asserts a claim for retaliation. Employers are prohibited from retaliating against employees for complaining of discrimination or other practices that violate Title VII. 42 U.S.C. § 2000e–3(a); *Sitar v. Indiana Dept. of Transp.,* 344 F.3d 720 (7th Cir.2003); *Miller v. Am. Family Mut. Ins. Co.,* 203 F.3d 997, 1007 (7th Cir.2000). A plaintiff in a Title VII case may prove a claim of retaliation under either the direct method of proof or the indirect method. *See Weber v. Universities Research Ass'n,* 621 F.3d 589, 592 (7th Cir.2010); *Rhodes v. Illinois Dep't. of Transp.,* 359 F.3d 498, 508 (7th Cir.2004). Under the direct method, a plaintiff must show direct or circumstantial evidence of "(1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the two." *Squibb v. Mem'l Med. Ctr.,* 497 F.3d 775, 786 (7th Cir.2007); *Davis v. Con–Way Transp. Central Express. Inc.,* 368 F.3d 776, 786 (7th Cir.2004).

"Direct evidence is defined the same for discrimination and retaliation claims – that is, it can be an admission of intentional discrimination or a 'mosaic' of circumstantial evidence that directly points to a discriminatory intent." *Davis,* 368 F.30d at 786. Circumstantial evidence generally comes in two forms: "(1) ambiguous statements or behavior toward other employees in the protected group that taken together allow an inference of discriminatory intent, and (2) evidence of systematically better treatment of employees outside the protected class." *Montgomery v. American Airlines, Inc.,* 626 F.3d 382, 393 (7th Cir.2010).

The first question is whether Plaintiff engaged in a protected activity. In order for a complaint filed with an employer to constitute statutorily protected activity under Title VII, the complaint must indicate that the discrimination occurred based on sex, race, national origin, or some other protected class. *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park,* 490 F.3d 558, 563

(7th Cir.2007) ("To constitute protected expression, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class"); *Gleason v. Mesirow Fin., Inc.,* 118 F.3d 1134, 1147 (7th Cir.1997). "Title VII gives plaintiffs flexibility with respect to the format of the complaint; statutorily protected activity can range from filing formal charges to voicing informal complaints to superiors." *Benitez v. Am. Standard Circuits, Inc.,* 678 F.Supp.2d 745, 762 (N.D.Ill.2010). Merely complaining in general terms of discrimination, however, without indicating a connection to a protected class or providing facts sufficient to create that inference is insufficient. *See e .g., Miller,* 203 F.3d at 1008 (no protected activity where complaints concerned a general displeasure with certain management practices but not discrimination related to a protected class).

The Court finds that Plaintiff engaged in statutorily protected activity on November 7, 2009 – when he objected to Hoguet's comments and actions during the condom incident; on December 3, 2009 – when he made a complaint of sexual harassment to Proffit; and on August 17, 2010 – when he filed his charge with the EEOC. Defendant does not dispute that the December 3, 2009 complaint and the August 17, 2010 EEOC charge were protected. However, Defendant argues that the November 7, 2009, condom incident was not protected because Plaintiff's objecting statements were too vague.

A plaintiff need not utter the phrase "I object to your sexual harassment" to bring his speech within Title VII's retaliation protections. *See Miller,* 203 F.3d at 1007. Providing facts sufficient to create an inference of opposition to sexual harassment can be sufficient. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir.2006). Here, Hoguet's statements were sexual in nature – commenting about Plaintiff having sex with Lisa and referring to the size of Plaintiff's penis as "Otey-sized." Plaintiff and Coates testified that Plaintiff

11

objected to Hoguet's comments; insisting that the comments were inappropriate, not funny, and that Plaintiff did not like them. Construing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's comments on November 7, 2009, qualify as statutorily protected activity.

In order to establish retaliation, the plaintiff must also show an adverse employment action. *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009); *Majors v, Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013). To qualify as an "adverse action," the terms or conditions of an individual's employment must be materially altered. *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012). It is important to consider the facts of each situation when determining whether an adverse action is material. *See Bryson v. Chicago State Univ.*, 96 F.3d 912, 916 (7th Cir.1996).

Defendant argues Plaintiff did not suffer an adverse employment action because "written reprimands that do not contain changes in the terms or conditions of employment are not adverse employment actions" (Doc. 33, p. 17). The Court disagrees. When viewing the facts in the light most favorable to Plaintiff, the Court notes several material adverse employment actions. First, the December 1, 2009, written reprimands by Proffitt – which were included in Plaintiff's personnel file and considered in the decision not to approve his secondary employment, the decision to terminate him, and the decision by other potential employers not to hire Plaintiff – qualify as adverse employment actions. Moreover, the December 15, 2009, memo regarding sick leave usage was also an adverse employment action in that it was considered in the denial of Plaintiff's secondary employment. The denial of secondary employment itself was an adverse employment action as Plaintiff was denied the ability to take on outside work for additional pay despite having been approved for secondary employment prior to the sexual harassment

complaint. The unsatisfactory year-end performance review was also an adverse employment action as it resulted in Plaintiff's constructive termination and was also disclosed to potential employers. Finally, after Plaintiff's termination and while Plaintiff's EEOC charge was pending, Defendant's unfavorable recommendations to other potential employers qualify as adverse employment actions.

In addition to showing adverse employment actions, Plaintiff must also show that the employer had actual knowledge of complaints to prove retaliation. *Luckie v. Ameritech Cor*p., 389 F.3d 708, 715 (7th Cir.2004). The relevant time for knowledge is when the alleged retaliation took place, not the time the protected activity occurred. *Hobgood v. Illinois Gaming Bd*., 731 F.3d 635, 642 (7th Cir. 2013). Within the FHPD, a lieutenant can write a letter of reprimand that goes in a personnel file while a sergeant can only give a supervisory reprimand that does not go in a personnel file. Therefore, Plaintiff must establish that Proffitt had knowledge of the November 7, 2009 incident in order to show that the December 1, 2009 reprimand was driven by retaliatory motives.

There is no evidence that Proffitt was aware of Plaintiff's concerns regarding sexual harassment before Plaintiff made the December 3, 2009, report to him. However, there is evidence that Hoguet reported the incidents that were the subject of the reprimands to Proffitt. Summary judgment is generally improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action. *See Shager v. Upjohn Co.,* 913 F.2d 398, 405 (7th Cir.1990) (even where the plaintiff's supervisor may not have passed along discriminatory animus to the ultimate decisionmaker, that animus tainted his assessment of the plaintiff's performance, on which the decisionmaker did rely); *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1155 (7th Cir.1989)

(relevant to jury's determination in age discrimination case that decision-maker accepted input from supervisor who had discriminatory motive); *see also Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1165–66 (7th Cir.1994) (summary judgment improper where supervisor who allegedly made age-related remarks participated in ranking the performance of company employees and in the eventual decision to terminate the plaintiff's employment).

Finally, Plaintiff must establish a causal connection between his protected activity and the adverse actions.  Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.  *See University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. ___, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013).  Direct evidence of causation would require something akin to an admission from Defendant that it took action against Plaintiff because of his protected activity.  *See Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013).  Of course, such admissions of retaliation are rare.  As a result, there is another evidentiary route to satisfy the direct method.  A plaintiff may satisfy the direct method using a "convincing mosaic of circumstantial evidence."  *Hobgood*, 731 F.3d at 643-644.

A convincing mosaic must include evidence from which an inference of retaliatory intent could be drawn, including circumstantial evidence of the following: "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Hobgood*, 731 F.3d at 643-44; *Teruggi v. CIT Group/Capital Finance, Inc.,* 709 F.3d 654, 659–60 (7th Cir.2013), quoting *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522,* 657 F.3d 595, 601 (7th Cir.2011); *Diaz v. Kraft Foods Global, Inc.,* 653 F.3d 582, 586–87 (7th Cir.2011).

Here, there were several adverse employment actions against Plaintiff that took place following the November 7, 2009, incident.  Specifically, between December 2009 and January 2010, Plaintiff received a number of adverse employment actions, including reprimands, denial of secondary employment, and ultimately the choice of resigning or termination.  In addition to suspicious timing, Plaintiff has presented evidence that only one other employee was given a warning about sick-time usage, which affected Plaintiff's eligibility for secondary employment.  Furthermore, while the memorandum denying Plaintiff's secondary employment cited Plaintiff's low productivity, both Proffitt and Gailius admitted that Plaintiff's productivity was on par with two other officers.   Proffitt also admitted that Plaintiff's reassignment to a different shift as a result of his sexual harassment complaint could also have affected his productivity.  When viewed as a whole, this evidence is sufficient to defeat summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss Count I (Doc. 34) is **DENIED**.  The Motion for Summary Judgment filed by Defendant City of Fairview Heights (Doc. 33) is **GRANTED** as to Plaintiff's Sexual Harassment claim (Count I of Plaintiff's First Amended Complaint) and **DENIED** as to Plaintiff's Retaliation claim (Count II of Plaintiff's First Amended Complaint).  Count I of Plaintiff's First Amended Complaint is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

**DATED:  August 28, 2015**

s/ Staci M. Yandle  
**STACI M. YANDLE**  
**United States District Judge**
